## HUMBLE OIL & REFINING CO. v. DAVIS.
### (No. 8852.)

(Court of Civil Appeals of Texas. Galveston.
May 8, 1926. Rehearing Denied
Oct. 7, 1926.)

1. **Boundaries** ⟨key⟩37(3)—**Testimony that tree hacks on line were not more than 15 years old held to raise no issue whether partition commissioners previously established line, as testified by commissioner.**

Testimony of surveyors that no hacks cut out of marked trees on line were more than 15 years old *held* insufficient to show line was not previously located and marked by commissioners of partition, as testified by one commissioner, in view of testimony that new hacks were placed on line trees.

2. **Boundaries** ⟨key⟩32—**Allegation that line claimed was established by partition commissioners and had been acquiesced in as true line held not to confine plaintiff to proof of title pleaded.**

Where petition in trespass to try title described line claimed by plaintiff and alleged it was established by commissioners of partition and had been continuously recognized and acquiesced in as true division line, plaintiff was not confined to proof of establishment of line by commissioners.

3. **Boundaries** ⟨key⟩42—**That line did not correspond with course expressed in partition report held not conclusive against finding that it effected an equal division.**

That division line, claimed by appellant, is located where true line should be established if run parallel with east line of tract, *held* not conclusive against finding that nonparallel line, claimed by appellee, divided tract into equal portions, though partition report provided for equal division by line parallel with east line.

4. **Boundaries** ⟨key⟩32—**Partition line established by commissioners or by acquiescence could not be changed in absence of allegations of fraud or mutual mistake.**

If line established by commissioners of partition or by agreement and acquiescence did not equally divide land, it could not be changed and re-established in absence of allegations of fraud or mutual mistake, notwithstanding partition decree provided for two equal portions.

5. **Boundaries** ⟨key⟩37(3)—**Evidence held not to conclusively show that line running S. 10 deg. 58″ W. did not equally divide tract, notwithstanding partition award provided for line to run S. 12 deg. W., parallel with east line.**

Evidence *held* not to conclusively show that line running S. 10 deg. 58″ W. did not equally divide 928-acre tract, notwithstanding report of commissioners of partition awarded an equal division and a line running S. 12 deg. W. and parallel with east boundary line.

6. **Boundaries** ⟨key⟩48(6)—**Purchaser who knew, or should have known, of an old established division line, cannot disregard it and establish a new one.**

Where purchaser knew, or by the exercise of care would have known, of the existence of an old established division line, it cannot disregard the line and establish a new line, even if the new line is more accurately located.

### On Motion for Rehearing.

7. **Boundaries** ⟨key⟩32—**Proof of recognition and acquiescence under allegations that line had been established by commissioners of partition and had been recognized and acquiesced in held not fatal variance.**

Where plaintiff, in trespass to try title, alleged line claimed by her had been located by commissioners of partition and had been recognized and acquiesced in, and proved recognition and acquiescence to establish the line, there was no fatal variance.

8. **Boundaries** ⟨key⟩37(5)—**Evidence held to show recognition and acquiescence in division line.**

Evidence *held* to warrant finding that, after partition between appellee and appellant's predecessor in title, latter knew of the line claimed by appellee, had recognized the line, and received benefits from its location, and hence should be held to have acquiesced therein.

9. **Boundaries** ⟨key⟩48(6)—**Recognition and acquiescence in line held to fix division line, though not run as provided in report of commissioners of partition.**

Where, after partition, parties recognized and acquiesced in a line as the true division line, they are bound by such line, notwithstanding it was not run at variation called for in report of commissioners of partition.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by Margaret T. Davis against the Humble Oil & Refining Company. Judgment for plaintiff, and defendant appeals. Affirmed.

John C. Townes, Jr., G. P. Dougherty, and W. F. Carothers, all of Houston, for appellant.

Campbell, Myer & Simmons, of Houston, for appellee.

PLEASANTS, C. J. This is a suit in the form of an action of trespass to try title brought by appellee against appellant. The land in dispute is a triangular tract of 11¼ acres lying along the southern portion of the line dividing lands owned by appellee and appellant on the William Scott survey in Harris county, and the only issue presented by the record is the correct location of said division boundary line. The following sufficient statement of the nature and result of the suit is copied from appellant's brief:

"In the year of 1895 there was a partition in the district court of Harris county of a tract of 928 acres of land in the western portion of the William Scott league, lying between the north line of the Scott survey and the bay on the south, between Mrs. Hannah E. Davis (now Sweeney) and her two children on the

one hand, and Margaret T. Davis and her husband on the other hand.

"The report of the commissioners of partition awarded the west half of said 928 acres to Margaret T. Davis and her husband, describing the same as follows:

"'Beginning at the S. E. corner of the George R. Davis 169½-acre tract in the William Scott survey, on the bay shore; hence running N. 22 deg. E. 1,767 vrs. to a stake in the prairie; thence north 667 varas to the north line of the Scott league; thence east along said north line far enough so that a line run S. 12 deg. W. and parallel with the east boundary line of said 928 acres, more or less, to Overland Bay, and thence up the shore of Overland Bay to Scott's Bay, and with the meanderings of Scott's Bay to the place of beginning, shall make and include 464 acres, more or less, being the western half of said 928 acres, more or less.'

"The report divided the east half of the 928-acre tract into three strips extending from the north line of the Scott to the bay on lines running 'S. 12 deg. W. and parallel with the east line of said 928 acres more or less,' and each calling for quantity for its distances, and awarded said three strips to Hannah E. Davis (now Sweeney) and her two children in severalty.

"In the year 1913 there was a suit by Beebee and others owning the land adjoining the 928-acre tract on the east in which all of the owners in the 928 acres were adverse parties, in which suit the location of the eastern line of the 928-acre tract was fixed by the court.

"In the year —— Hannah E. Sweeney and her children sold 150 acres off the south end of their half of the 928 acres, extending from the bay towards the north and from their west to their east lines, to R. S. Sterling, who in turn sold same to the Humble Oil & Refining Company, appellant.

"George R. Davis died and devised all of his property to his wife, Margaret T. Davis, the appellee.

"Margaret T. Davis, as the owner of the western half of said 928-acre tract, brought this suit in the district court of Harris county, alleging that, in fencing the 150 acres it acquired from the Sweeneys through R. S. Sterling, appellant located the west line of the fence, extending from the bay to the N. W. corner of its 150 acres, too far west, thereby encroaching upon her land to the extent of 11¼ acres, and the suit is in fact one of boundary.

"Plaintiff below alleged that said 928-acre tract actually contains 962 acres, and specifically alleged that the commissioners of partition actually located the dividing line between the Sweeney and the Davis moieties of said '962-acre tract' on the ground by 'beginning at a Bois d'Arc stake set near the margin of Mitchell's Bay, about 300 feet more or less north of mean low tide, which stake is north 24 deg. 11' E. of an iron pipe set in the margin of said Mitchell's Bay, which iron pipe also marked the south end of a fence recently built by the defendant, Humble Oil & Refining Company.

"'The said line so marked upon the ground runs from the edge of Mitchell's Bay at mean low tide N. 10 Deg. 52' E. passing said Bois d'Arc stake and continuing north 10,552.9 feet to a stake set for corner in the north line of the William Scott league, which stake is 3,249.4 feet east of the N. W. corner of the Sarah Williams 1,100 acres (out of which the 928-acre tract comes), and said stake is 2,060.3 feet west of the N. E. corner of said Sarah Williams tract.'

"Plaintiff further alleged that 'said dividing line so located by said commissioners of partition has, since 1895, been recognized and acquiesced in by all of the parties to said partition suit above mentioned until the Humble Oil & Refining Company acquired' said 150 acres.

"There was an alternative allegation and plea to the effect that, if, for any reason, plaintiff should be mistaken in her contention that the commissioners of partition in the suit of 1895 actually marked upon the ground the dividing line between the east and west halves of said '962-acre tract,' then, under that construction of the decree of partition, she and her husband were given the west 481 acres of said 962-acre tract, 'the dividing line running from the south line thereof north 12 deg. E. to the north line of the said 962 acres tract,' and in that case she sues in trespass to try title for 'a strip of land 84 feet wide at the north end and 54.6 feet wide at the south end' (describing same by metes and bounds; the same representing the amount by which the defendant's fence encroached over the middle line of a tract containing 962 acres instead of 928 acres).

"The defendant answered with a general denial and a plea of not guilty, and specially alleged that its west fence line was located on its own side of the true dividing line between the east and west halves of said original 928-acre tract as per the decree of partition in 1895, and that the land sued for is in the east half of said 928-acre tract.

"In connection with a suggestion of improvements made in good faith, appellant further alleged that, before closing its purchase of said 150 acres of land from the Sweeneys, it had the title examined by competent attorneys, who reported the title good in the Sweeneys, and had the land surveyed by competent surveyors, who marked its boundaries on the ground, and report that said 150-acre tract is out of and a part of the east half of said 928-acre tract; that it paid $45,000 for said 150 acres of land, and, 'believing in good faith that it had acquired a good title to the entire tract of 150 acres, soon after entered upon and took actual possession of said tract of land, including the land sued for herein, and has been in actual, adverse, and exclusive possession of said property for more than a year before the commencement of this suit, and during said time this defendant had made the following permanent and valuable improvements upon the land sued for, in good faith,' to wit, the fence above mentioned.

"The cause was tried before the court without a jury, and judgment was rendered for the plaintiff for the land sued for in the first paragraph of her petition. The court found, as matter of fact, that 'the commissioners of partition did not actually run said line on the ground,' but that 'said line is an old established line which runs from the north line of the Scott league to Scott's Bay on the south."

"'I further find that this line so established on the ground was recognized by both Hannah E. Sweeney and her two children and by George R. and Margaret T. Davis, they being the owners of said 928 acres more or less of land, and

I further find that said marked line was actually surveyed on the ground ·prior to the year 1900, and has been ever since said date acquiesced in and recognized by Hannah E. Sweeney and her two children and George R. and Margaret T. Davis.

"'I find that the marked line above referred to actually divided the 928 acres of land, more or less, into two equal parts; * * * the portion lying west of said marked line is probably 5 acres less than half of said 928 acres more or less.

"'I find that the parties owning the land have acquiesced in said line ever since and they and the parties holding under them are now estopped to repudiate said line.'

"Conclusions of law were filed in harmony with the above findings of fact.

"No finding of fact, nor conclusions of law, were requested by the plaintiff nor filed by the court with reference to plaintiff's alternative plea that if the north 10 deg. 52 min. east line was not the work of the commissioners of partition in 1895, then that the 928-acre tract contained 962 acres, and the middle partition line should be located proportionally further eastward by the formula provided in the partition decree of 1895."

The findings of the trial court that the division line between the land set apart to George R. Davis and that awarded Mrs. Sweeney in the partition suit between these parties is an old established line and that said old marked line was actually surveyed on the ground prior to the year 1900, and has been ever since said date acquiesced in and recognized by the Sweeney and Davis families, and that said line actually divided the 928 acres more or less into approximately two equal parts, the only inequality in such division being an excess of 5 acres in the tract set apart to Mrs. Sweeney, are amply supported by the evidence. We also think that the finding of the trial court that this line was not established and marked by the commissioners who made the partition is contrary to the undisputed evidence, and appellee's cross-assignment complaining of this finding should be sustained.

L. B. N. Schneider, the only living witness who was present and assisted in the making of the division of the land, testified as follows:

"I have lived in Harris county all my life. I knew J. J. Gillespie. He was county surveyor. He is dead. He and I were the commissioners who partitioned a tract of land the Scott league in 1895 between George R. Davis and Mrs. Sweeney. I remember very well making the survey. The last time I was on this land was about two months ago. I went with Mr. Campbell to look over this marked line in controversy. The marked line was surveyed by Mr. Gillespie and myself in 1895. We ran that line from the bay all of the way through the 962 acres of land up to the north line of the Scott league. We marked that line in 1895 through the timber, which was about a mile and a quarter wide. The line I saw marked on the ground is the same line we surveyed and marked in 1895. We hacked the trees as we went along. The line I saw when on the ground the other day with Mr. Campbell is the same line that Mr. Gillespie and I surveyed and hacked in 1895. I carried the chain. Mr. Gillespie was the surveyor. I went on the ground a few days ago with Mr. Campbell to see if I could recognize the line as the one we ran out on the ground when we divided the land in 1895. No one assisted Mr. Gillespie and I in making this survey. We were out there on the ground six or seven days in making that survey. I remember carrying the chain through that thicket on the line. Before we divided the land we ran all around the entire tract and then divided it into two equal parts (witness indicated the line claimed by plaintiffs on the map in evidence). We also ran out the east line of the entire tract down next to Mitchell's house. We surveyed all around the entire tract before we divided it. I am positive that we actually surveyed and hacked this line in dispute in this case in 1895. I remember distinctly hacking the trees on that line. We started to make the survey at the Mitchell place and went up the bay, and around the entire tract. We were down there on the ground running these lines six days. I have described how we did the work of dividing that land as best I can remember."

J. L. Wooster testified:

."From 1882 to 1909 I lived near the Scott league of land in Harris county. I remember the circumstances of this land being divided between Mrs. Sweeney and Mr. Davis since the time of the division. I have many times seen the dividing line between the Davis and Sweeney land in the Scott league. I could not tell exactly the first time I ever saw that line. My father was there during the time the land was being divided. I know that the first time I ever saw that line was before the 1900 storm. I have known this line dividing the Davis land from the Sweeney land for more than three years before the 1900 storm. When we went to go from where we lived to the bay, we traveled what we called the old Cold Springs road. The old Cold Springs road ran right down the dividing line, and it crossed the line a time or two before it reached the bay. I had occasion lots of time to travel that Cold Springs road, and it was on those occasions that I would see and recognize that dividing line. My father was the first one to tell me that that line was the line which divided the Davis land from the Sweeney land. I went there on this line with Mr. Campbell, one of the attorneys for plaintiff. The line I showed Mr. Campbell on the ground I have known since about four years before the 1900 storm, and that line I saw there before the 1900 storm is the same line I showed Mr. Stewart Boyles, Mr. Stratford, and Mr. Campbell the other day. The old Cold Springs road used to run right by the side of that line (witness recognized photographs introduced in evidence as taken of the marked trees that were on the line that he knew since before the 1900 storm, which divided the Davis and Sweeney tracts of land). My father is the man that showed me and told me that was the line that divided the Davis land from the Sweeney land. He said it was the line established by the court. You can follow that line from one end to the other without any trouble. Sometimes this line was

as much as 20 feet off of the old Cold Springs road and sometimes closer. The 1900 storm blew a great deal of the old timber down across this road and since that the old Cold Springs road has not been used as a road."

It was also shown by the testimony of a witness who helped carry the chain for a part of the time the commissioners were engaged in making the survey of the land, but did not assist in locating the line in question, that Mrs. Sweeney was present near the land when the partition was made and got witness to assist in making the survey, and witness heard her tell Mr. Gillespie that she wanted this division line actually located on the ground.

In 1909 George R. Davis and Mrs. Sweeney leased to the San Jacinto Rice Company all of their land on these two tracts suitable for the cultivation of rice. The land so leased was in the northern portion of the two tracts and was prairie land. When this lease was made, George R. Davis pointed out to the agent of the Rice Company this division line.

The engineer for the Rice Company testified:

"Mr. George Davis showed me on the ground the line that divided these two tracts of land in January, 1909, and I followed the line through the timber, and there were old surveyor's hacks on the trees all the way through the timber. Mr. Davis himself pointed out to me the dividing line between his land and Mrs. Sweeney's. As the San Jacinto Rice Company was renting the land from both of them, he wanted me to know exactly where the dividing line was, so that we would have no trouble about it. Mrs. Sweeney owned the land on the east and Mr. Davis owned the land on the west side of the hacked line. You could follow these hacks on the trees on that line easily. Near the north end of that line is mot of timber. There is a prairie there near that mot of timber and the line that Mr. Davis showed me ran through that mot of timber. Right on the north side of that mot of timber was a big pin oak tree that was marked as a side line, and when we cultivated that land in rice I put up a rice levee right on that line through the prairie. That rice levee divided the Davis land from the Sweeney land. We paid Mrs. Sweeney rent for the land on the east side of the levee and we paid Mr. George R. Davis rent for the land on the west side. We cultivated the land on both sides of this dividing line for 8 years beginning with January, 1909. The trees in 1909 all along that line were well marked. Some of the hacks were very old and some looked like they were very recent. We paid the rent on the Sweeney land to her and to Mr. Davis we paid the rent on his land, and there was never any question about the correctness of that dividing line during the 8 years we cultivated the land."

[1] It was further shown by the testimony that when the line was resurveyed for the Rice Company in 1909 new and additional hacks were placed on trees along the line. The only testimony that tends to cast any doubt on the testimony of the witness Schneider, that he and the other commissioner, Gillespie, located and marked the line in question, is that of several surveyors who cut the hacks out of a number of the marked trees found on the line and who stated that none of these hacks were more than 15 years old. We think this testimony is too inconclusive to raise an issue as to whether the line was established by the commissioners.

The undisputed evidence shows that, when the line was resurveyed at the time the lands were leased to the Rice Company, new hacks were placed on a number of line trees. This was 15 years before its examination by the surveyors who testified for the defendant. It was further shown that some one had placed other and newer hacks on some of these trees. Defendant's witnesses did not claim that they examined all of the marks on this line. Mr. Maxey, one of these witnesses whose testimony was as conclusive or more so than that of any of defendant's witnesses who testified as to the age of the marks on the line, says:

"I cut the hacks out of a chittam tree. There were two sets of marks on this tree and they were 6 years old. The next tree was an 8-inch pine. There were three hacks on this tree 9 years old. There was a pin oak 8 inches in diameter that had fallen down which had three hacks on the under side. This was hacked within the last 3 years. A pine 22 inches in diameter had old hacks 15 years old on it. Another pine, 20 inches in diameter, had the same aged hacks on it. A red oak 10 inches in diameter had been marked 9 years ago. A pin oak 9 inches in diameter had hacks on it 9 years old. A big pine south of the road had marks on it showing 15 or 16 years old. The big pin oak in the north end of the line showed to have been marked in 1910. A young pine had two sets of hacks on it freshly made about 3 years ago. They had hardly had time to heal. We did not cut out all of the surveyor's marks that we found on the trees."

Given the strongest probative force, this testimony only raises a surmise or suspicion as to the date of the original location and marking of the line, and cannot be regarded as any legal evidence that the line was not located and marked by the commissioners, as testified by Mr. Schneider.

Under an appropriate proposition, appellant first complains of the judgment on the ground that the plaintiff, having alleged in her petition that the line claimed by her as the division line between her land and that of appellant was established on the ground by the commissioners of partition in the partition suit in 1895, is bound by such allegations, and the judgment of the trial court, establishing the line claimed by her on the findings of the court that it was not established by the commissioners of partition, but by subsequent agreement and ac-

quiescence being without any pleading to support it, is unauthorized.

Our finding that the undisputed evidence shows that the line was established by the commissioners and that the contrary finding of the trial court should be set aside is a sufficient answer to this complaint. If, however, our finding should be held unauthorized, we do not think appellant's objection to the judgment on this ground should be sustained.

[2] The petition describes the line claimed by plaintiff, and, in addition to the allegation that it was established by the commissioners of partition, alleges that it has been continuously recognized and acquiesced in by appellant's predecessors in title since its establishment. Under these allegations we do not think the plaintiff should be confined to proof of the establishment of the line by the commissioners of partition to entitle her to a judgment. The rule invoked by appellant, to the effect that when a plaintiff in an action of trespass to try title specially pleads his title he is confined to proof of the title pleaded, cannot be applied to the petition in this case.

Under our finding that the undisputed evidence shows that the line claimed by the appellee was established by the commissioners of partition, the question of the acquiescence of Mrs. Sweeney and her children in the location of the line becomes immaterial; but, if such acquiescence was material, it is, we think, abundantly shown by the evidence we have before set out.

[3, 4] We cannot agree with appellant that the fact that the division line claimed by it is located where the true line should be established if run from the north line of the Scott survey parallel with the east line of the 928 acres more or less, as said east line was fixed and established by the decree in the suit of Beebee against George R. Davis and Mrs. Sweeney and her children, is conclusive against the finding of the trial court that the line claimed by appellee divides the 928-acre tract into practically two equal portions. In the view we take of the evidence, this finding of the trial court is immaterial. If the line established by the commissioners or by agreement and acquiescence did not equally divide the land, it could not be changed and re-established in the absence of allegations of fraud or mutual mistake. In addition to this, the evidence does not conclusively show that the line found by the trial court to have been long established, recognized, and acquiesced in by the parties, does not equally divide the 928-acre tract, conceding that appellee is bound by the location of the east line of the tract as fixed by the decree of the Beebee suit.

[5] The line fixed by the trial court runs S. 10 deg. 58″ W., while the line of the 928-acre tract as fixed by the Beebee suit runs S. 12 deg. W. Notwithstanding this difference in the variations, it is manifest that the division line fixed by the court could divide the land in equal parts as the excess in the west portion at the south end of the line would be offset by excess in the east portion at the north end, and this variation does not militate against the court's finding that the line divided the tract into two equal portions.

The report of the commissioners of partition which was approved by the court in the suit of Davis v. Sweeney describes the division line as beginning on the north line of the Scott league at a point such a distance from the N. E. corner of the 928-acre tract that a line run from said beginning point "S. 12 deg. W. parallel with the east line of the 928-acre tract to Overland Bay and thence up the shore to Overland Bay to Scott's Bay and with the meanderings of Scott's Bay to the place of beginning shall make and include 464 acres more or less, being the western half of said 928 acres."

[6] If this line was actually established and marked by the commissioners, or shortly thereafter by the parties to the suit, and was thereafter continuously recognized and acquiesced in by them, as found by the trial court, appellant should be held bound by the line so established, notwithstanding the fact that it does not strictly correspond with the course called for in the report of the commissioners of partition. The evidence is amply sufficient to sustain a finding that appellant knew, or by the exercise of any care would have known, of the existence of the old established division line when it purchased its land, and it was not authorized to disregard this line and establish a new line, even if the line claimed by it is more accurately located as called for in the partition decree.

We think the judgment should be affirmed, and it has been so ordered.

Affirmed.

## On Motion for Rehearing.

In appellant's motion for rehearing our attention is called to testimony found in the statement of facts which was not referred to in appellant's brief, nor otherwise brought to our attention before the filing of our original opinion, and which tends to contradict the testimony quoted in our opinion showing that the line claimed by appellee and found by the trial court to be the dividing line between the land of appellant and appellee was established by the commissioners of partition who partitioned the land in 1895 under the orders of the district court of Harris county.

In view of this contradictory testimony, we feel constrained to withdraw our former holding that the evidence compelled a finding by the trial court that the line was estab-

lished by the commissioners of partition. While this contradictory testimony is, in our opinion, of little weight, we cannot hold that it does not raise an issue as to whether the line was established by the commissioners, and we are not authorized upon the evidence as a whole to set aside the finding of the trial court that the line was not established by the commissioners. But this reversal of our fact finding does not require a reversal of the judgment. As stated in our original opinion, other findings of fact by the trial court, which are set out in the opinion, sustain the judgment.

[7] We adhere to the conclusion that the rule which confines a plaintiff in an action of trespass to try title to proof of the title pleaded by him is not applicable in this case. The petition accurately describes the line claimed by plaintiff and alleges that this line was fixed and established by the commissioners of partition in 1895 and has been continuously recognized and acquiesced in as the true division line by plaintiff and appellant's predecessors in title. If the evidence shows that Mrs. Sweeney knew of the location of the line and has recognized it as the dividing line between her land and that of appellee, and such location and recognition of the line inured to her benefit or to the detriment of appellee, its location is now fixed regardless of whether it was run and established by the commissioners of partition. The line being accurately described and identified in the petition, proof of the allegations of recognition and acquiescence by Mrs. Sweeney entitles appellee to hold to this line. If the line had been established by the commissioners of partition, recognition and acquiescence on the part of Mrs. Sweeney need not have been alleged or proven. But having alleged and proven recognition and acquiscence of such character as to establish the line, the allegation that it was established by the commissioners becomes immaterial. Plaintiff having sought to establish the line on two grounds, each of which was sufficient in itself, appellant cannot claim a fatal variance between the allegations and proof, because the evidence fails to establish the line on both the grounds alleged. There was no exception to this pleading and no objection to the evidence introduced by plaintiff tending to show recognition and acquiescence in this line by appellant's predecessors in title. The undisputed evidence shows that Mrs. Sweeney was on or near the land when it was divided by the commissioners in 1895, and that she was insisting on having the dividing line fixed and marked. She was in Texas again in 1897 and in 1910 looking after her interest in this and adjoining lands. In 1908 or 1909 she joined in leasing the northern portion of the original tract to the San Jacinto Rice Company and received rent for 8 years on all the land in the tract covered by the lease which was east of the line claimed by appellee. This line so divides the land as to give Mrs. Sweeney and her children a larger acreage in the northern portion of the tract than would a line run at the variation called for in the report of the commissioners of partition. There is no evidence that any revenue was derived by appellee or her predecessors in title from the land now claimed by appellant.

[8, 9] We think the trial court was warranted by the evidence in concluding that Mrs. Sweeney knew of the location of the line claimed by appellee, and, having recognized this line and received benefits for a number of years from its location which would not otherwise have accrued to her, she should be held to have acquiesced in its location, and neither she nor appellant can now be heard to complain that it was not accurately located as called for in the report of the commissioners of partition.

The motion for rehearing is refused.